IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Urban Commons 2 West LLC, Urban Commons 2 West II LLC, and Urban Commons 2 West III LLC,<br><br>        Petitioner,<br><br>   v.<br><br>New York Hotel & Motel Trades Council, AFL-CIO,<br><br>        Respondent. | Civil Action No. 1:21-cv-04842 |

**PETITION TO VACATE THE ARBITRATION AWARD**

Petitioner Urban Commons 2 West LLC, Urban Commons 2 West II LLC, and Urban Commons 2 West III LLC (collectively, "Petitioner" or "Urban Commons") petitions this Court, pursuant to 9 U.S.C. § 10 and 29 U.S.C. § 185(a), for an order vacating the Final Arbitration Award ("Award") issued on March 10, 2021, in an arbitration between the Respondent, New York Hotel & Motel Trades Council, AFL-CIO (the "Union"), and the Petitioner, that purport to bind Petitioner as a signatory and party of the Industry-Wide Agreement ("IWA"). In support of this petition, Petitioner alleges as follows:

**Parties**

1. Petitioner is licensed to do business in the State of New York. Its principal place of business is 10250 Constellation Blvd., Suite 1750, Los Angeles, CA 90067. Petitioner is an employer within the meaning of Section 2(2) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2).

2. Respondent, New York Hotel and Motel Trades Council, AFL-CIO (the "Union"), is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5).

1

### Jurisdiction

3. This is an action to vacate arbitration awards rendered by the Office of the Impartial Chairperson, in favor of the Union. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 185(c) and 9 U.S.C. § 10.

### Venue

4. Venue is proper in this judicial district pursuant to 29 U.S.C. §§ 185(a),(c), 9 U.S.C. § 9, and 28 U.S.C. § 1391. This is the United States court in the judicial district in which the Respondent resides and is registered to do business. The events or omissions giving rise to the claims also occurred in this district.

### Factual Background

5. The Wagner at the Battery ("Hotel") is an independent hotel located in the southern tip of Manhattan, across from Wagner Park.

6. In 2018, the Hotel changed ownership when it was bought by Urban Commons.

7. When it acquired ownership of the Hotel, Urban Commons executed an assumption agreement to be bound by the Industry Wide Agreement ("IWA"), which is the master contract between the New York Hotel and Motel Trades Council, AFL-CIO ("Union") and the Hotel Association of New York City, Inc. ("Association").

8. Along with its purchase of the Hotel, Urban Commons also entered into a mortgage agreement ("Mortgage Agreement") with BPC Lender, LLC ("Lender") to obtain a loan to purchase the Hotel.

9. Urban Commons also retained Highgate Hotels, LP ("Highgate") to operate the Hotel, and Highgate also executed an assumption agreement to be bound by the terms of the IWA.

10. Urban Commons, Lender, and Highgate executed a Subordination, Assignment, Nondisturbance and Attornment Agreement ("SNDA"). This provided Lender with a lien on Urban Commons' and Highgate's rights in the Hotel.

11.     Lender did not execute an assumption agreement to be bound by the terms of the IWA.

12.     The preamble of the IWA defines an "EMPLOYER" as "each and every such hotel, motel, and concessionaire, including their owners, managers, operators, respective affiliated and related entities, successors and assigns."

13.     Lender is not covered in the definition of "EMPLOYER."

14.     Article 59 of the IWA is directed to "Successors and Assigns." Paragraph B provides that "EMPLOYER shall make it a written material condition of any transaction of any kind whatsoever which transfers majority ownership, management, or operational control of the Hotel or Concessionarie such that the party ("transferee") assuming such majority ownership, management, or operational control must assume and be bound in writing to this Agreement."

15.     The Mortgage Agreement and SNDA (collectively, the "lending agreements") do not transfer majority ownership, management, or operational control of the Hotel to Lender.

16.     Lender has not revoked the Owner's License under Section 2.4 of the SNDA, declared any "Event of Default" under Section 7 of the Mortgage Agreement, commenced a foreclosure action, or assumed any of Urban Commons' rights or obligations in any respect whatsoever.

17.     Other than the loan, Lender is completely unaffiliated with either Urban Commons or Highgate. It is not a successor or assign of either Urban Commons or Highgate.

18.     The Union initiated an arbitration proceeding, demanding a determination from the Impartial Chairperson ("IC") that Urban Commons and Highgate violated Article 59 of the IWA because the lending agreements did not require Lender to assume the IWA. It also sought a determination providing for "a sum certain of damages to be paid by the Owner and [Operator] for its Article 59 IWA violations."

19. On March 10, 2021, the IC held in the Union's favor and concluded that Urban Commons and Highgate violated the IWA by not requiring the Lender to execute an assumption agreement of the IWA.

20. The Association requested clarification on whether the IC's decision applies to all lenders.

21. On March 31, 2021, the IC issued a clarification order, providing its decision "does not by itself bind lenders to the IWA absent special facts and circumstances" and "does not mean that all Hotels bound to the IWA that have a loan or mortgage are now automatically in breach of Article 59 and liable for damages."

22. The IC's order and clarification order do not identify any facts or circumstances that make the lending agreements here different from any of the hundreds of similar lending agreements in place throughout the city.

23. On May 4, 2021, the Union sent a letter to Urban Commons and Highgate, stating that it would seek damages under Article 59 unless both parties required the Lender to execute an assumption agreement of the IWA.

24. Urban Commons and Highgate do not have the authority to force the Lender to execute an assumption agreement.

### Grounds for Vacating the Arbitration Award

25. Vacatur is required when arbitrators "exceeded their powers" under the arbitration agreement. 9 U.S.C. § 10(a)(4). To determine if an award violates Section 10(a)(4), a court examines "whether the arbitrators had the power, based on…the arbitration agreement, to reach a certain issue…." *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) (citations omitted). When an award contradicts the plain language of the collective bargaining agreement, the arbitrator goes "beyond the scope of his authority" and the award must be vacated. *See Matter of Arbitration Between Melun Indus., Inc. & Strange*, 898 F. Supp. 990, 993 (S.D.N.Y. 1990).

26. First, vacatur is required because the IC's decision contradicts the plain language of the IWA. The definition of "EMPLOYER" does not include a lender. And the text of Article 59 makes no sense when applied to Lender. By providing a loan for Urban Commons to purchase the Hotel, the Lender did not acquire or assume "majority ownership, management, or operational control" in the Hotel.

27. Second, vacatur is required because the IC's decision is contrary to the structure and history of the IWA and its implementation. The IWA nowhere even mentions the words "lender" or "mortgagee," nor have these provisions in the IWA ever previously been interpreted to apply to lenders purely because they issued a loan to a borrower that is party to the IWA.

28. The Award is subject to vacatur because it does not, as required by the LMRA, "draw its essence from the contract" but instead "simply reflect[s] the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

29. The Award should also be vacated because it upsets settled expectations and creates severe consequences in the hospitality industry, which is already cratering under the shock waves of economic hardship from COVID-19.

30. Any of these actions by the IC are sufficient to require vacatur of this award.

31. The Award has not been modified or corrected.

32. This petition has been filed within three months, and within 90 days, after the issuance of the Award, on March 10, 2021.

33. Petitioner has not made any previous application to vacate or confirm the Award.

**WHEREFORE**, Petitioner respectfully request the Court:

a) Vacate the Award; and

b) Grant any other such relief as the Court deems just and proper.

Dated: June 1, 2021                                    Respectfully Submitted,

/s/ Paul Rosenberg
PAUL ROSENBERG
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, N.Y. 10111
(212) 589-4299 (phone)
(212) 589-4201 (fax)
prosenberg@bakerlaw.com

ANDREW M. GROSSMAN*
RENEE M. KNUDSEN*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697 (phone)
(202) 861-1783 (fax)
agrossman@bakerlaw.com
rknudsen@bakerlaw.com

*Attorneys for Petitioner*

\**Pro hac vice* applications forthcoming.