UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Urban Commons 2 West LLC, Urban
Commons 2 West II LLC, and Urban
Commons 2 West III LLC,

                        Petitioners, Cross-
                        Respondents,

-against-

New York Hotel & Motel Trades Council,
AFL-CIO,

                        Respondent, Cross-
                        Petitioner.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/18/2022_

21 Civ. 4842 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Petitioners and Cross-Respondents Urban Commons 2 West LLC, Urban Commons 2 West II LLC, and Urban Commons 2 West III LLC (together, "Urban Commons") bring this petition under § 301 of the Labor Management Relations Act of 1974 (the "LMRA"), as amended, 29 U.S.C. § 185,[1] to vacate an arbitration award (the "Award") in favor of Respondent and Cross-Petitioner, New York Hotel & Motel Trades Council, AFL-CIO (the "Union"). *See* U.C. Pet., ECF No. 1. The Union brings a petition under the LMRA to confirm the Award against Urban Commons. *See* Union Pet., ECF No. 22. For the reasons stated below, the Union's petition is GRANTED, and Urban Commons' petition is DENIED.

## BACKGROUND

In 2018, Urban Commons bought the Wagner Place Hotel located in Manhattan (the "Hotel").[2] *See* SNDA ¶ A, ECF No. 7-7; Bokerman Decl. ¶ 11, ECF No. 24. Urban Commons

---

[1] Urban Commons also asserts that it is bringing its petition to vacate the Award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, but "[t]he FAA does not apply to arbitrations, like this one, conducted pursuant to the LMRA," *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 546 (2d Cir. 2016).

[2] The Court notes that the parties' Rule 56.1 statements do not comply with Rule 56.1 because the statements therein are not "followed by citation to evidence which would be admissible." Local Rule 56.1(d). "[A]llegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). The Court shall, therefore, deem facts true only where they are supported by admissible evidence in the record.

agreed to be bound by the Industry Wide Agreement ("IWA"), a collective bargaining agreement between the Union and the Hotel Association of New York City, Inc.  *See* Bokerman Decl ¶ 11; *see generally* IWA, ECF No. 7-4.  Urban Commons retained Highgate Hotels, LP ("Highgate") to operate the Hotel.  *See* Bokerman Decl. ¶ 11; SDNA ¶ A.  BPC Lender, LLC, (the "Lender") financed the purchase of the Hotel.  *See generally* SDNA; Mortgage, ECF No. 7-6.  Urban Commons executed a mortgage agreement and a subordination, assignment, non-disclosure, and attornment agreement (together, the "Mortgage Agreements") in connection with the loan.  *See* Bokerman Decl. ¶ 12; *see generally* SDNA; Mortgage.

>Under Article 59(B) of the IWA, an
>
>[employer] shall make it a written material condition of any transaction of any kind whatsoever which transfers majority ownership, management or operational control of the Hotel or Concessionaire such that the party ("transferee") assuming such majority ownership, management or operational control must assume and be bound in writing to [the IWA].

*See* IWA, Art. 59(B).

Under the Mortgage Agreements, the Lender obtained a lien on Urban Commons' and Highgate's rights in the Hotel.  *See* Bokerman Decl. ¶¶ 13–14; Mortgage Art. 7; SDNA.  In the event of a default on the loan, the Lender may "enter . . . and dispossess" Urban Commons and "operate, manage, control . . . and otherwise deal with all and every part of the [Hotel] and conduct the business thereat."  Mortgage Art. 7, § 7.1(h).  In short, in the event of a default, the Lender may "exercise all rights and powers" of Urban Commons.  *Id*.  The Lender did not execute an agreement obligating it to be bound by the IWA.  Bokerman Decl. ¶ 15; *see also* Mortgage.

The IWA provides that arbitration should be used to resolve "[a]ll complaints, disputes or grievances arising between the parties . . . involving questions or interpretation or application of

2

any clause of the [IWA], or any acts, conduct or relations between the parties, directly or indirectly." *See* IWA, Art. 26(A).  It also states that the decisions of the arbitrator, known as the Impartial Chairperson (the "IC"), "shall be final and binding upon the parties." *Id*.  Furthermore, it provides that "[a]ny questions regarding arbitrability, substantive, procedural or otherwise, or regarding [the IC's] jurisdiction or authority, shall be submitted to the [IC]." *Id*.

In the fall of 2020, the Union initiated an arbitration proceeding against Urban Commons. *See* Bokerman Decl. ¶¶ 16–17.  The Union claimed that Urban Commons violated Article 59 of the IWA by entering into the Mortgage Agreements with the Lender without requiring the Lender to assume the obligations of the IWA in the event of a default by Urban Commons. *Id*. ¶¶ 15–16.  The IC held two days of hearings and entered the Award in favor of the Union on March 10, 2021. *Id*. ¶ 17.  The IC noted that, under the Mortgage Agreements, the "Lender could take possession or control of the Hotel . . . in the event [Urban Commons] defaulted on the loans."  Award at 22, ECF No. 7-1.  He recognized that the dispute centered on whether "the unrealized security interest in the property which allows the Lender, in the event of default by [Urban Commons] on the loan, to take possession and control of the [Hotel] . . . and remove [Highgate] violated Article 59 of the IWA because it [did] not expressly state that the Lender . . . assume the IWA." *Id*.  The IC held that Urban Commons violated the IWA by entering into the Mortgage Agreements because they constituted a transaction "that envisions a future change in ownership, management and/or control." *Id*. at 23.  In reaching this conclusion he reasoned that "[e]ven if the change is contingent, and the Lender's interest is no more than a security interest currently, that does not relieve the parties of any obligation to ensure that the potential change set forth in the documents is compliant with the IWA." *Id*.  The IC relied upon the fact that Article 59's requirements apply to "any transaction of any kind whatsoever" that "transfers majority,

ownership, management or operational control of the Hotel." *Id*. He found that this broad language covered the Mortgage Agreements, and that a failure to include a material condition that the Lender assume the IWA in the event of Urban Commons' default was a "technical violation of the IWA." *Id*. The Award gave Urban Commons "a reasonable period of time to correct the violation" and retained jurisdiction over the dispute in the event Urban Commons was unable to cure its violation. *Id*.

After issuing the Award, the IC clarified that its ruling would not automatically apply to all similar disputes, which would be resolved based on their individual facts and circumstances. ECF No. 7-2. By letter dated May 4, 2021, the Union stated to Urban Commons that it would seek damages unless the Lender executed an agreement obligating it to be bound by the IWA. ECF No. 7-5.

On June 6, 2021, Urban Commons brought a petition to vacate the Award. *See* U.C. Pet. On July 23, 2021, the Union opposed Urban Commons' petition and brought a cross-petition seeking confirmation of the Award. *See* Union Pet. Urban Commons opposed the Union's cross-petition, arguing that the Court may not confirm the Award without the Union joining the Lender as a necessary party under Federal Rule of Civil Procedure 19. *See* U.C. Reply at 11–12, ECF No. 28.

## ANALYSIS

I. <u>Joinder</u>

    A. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 19(a)(1):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so

4

situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

When assessing a motion under Rule 19(a)(1)(A), courts find that "[a] nonparty to a commercial contract ordinarily is not a [required] party to an adjudication of rights under the contract." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) (citation omitted). This principle reflects the fact that nonparties are generally "not required to do anything" under the contract or the arbitration award that stems from the contract's interpretation. *See id*.

Moreover, courts only address Rule 19(a)(1)(B) when the nonparty claims an interest in the action before the court. *See Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010) (citing *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996)). Because "the plain language of Rule 19(a)(1)(B) requires the absentee to 'claim an interest' in the litigation," *id*., "[i]t is not sufficient that an existing party attempts to assert the absentee's interest on its behalf," *Artists Rights Enf. Corp. v. Estate of Robinson*, No. 15 Civ. 9878 , 2017 WL 933106, at *9 (S.D.N.Y. Mar. 8, 2017) (citing *Peregrine Myanmar*, 89 F.3d at 49). Parties need not move to intervene in order to claim an interest in a proceeding, *SafeNet*, 758 F. Supp. 2d at 259, but they must "[a]ssert[] a formal interest in either the subject matter of [the] action or the action itself," *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043–44 (9th Cir. 1983). Additionally, courts addressing the concerns of Rule 19(a)(1)(B) only consider those harms which may result from the non-party's absence in the proceedings. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387–88 (2d Cir. 2006).

B. <u>Application</u>

Urban Commons argues that the Court cannot confirm the Award without joining the Lender as a party to these proceedings. *See* U.C. Reply at 11–12. The Court disagrees.

First, Urban Commons contends that the Lender is a required party under Rule 19(a)(1)(A) because the Union "cannot obtain the final relief it seeks, which is having the Lender become presently bound by the IWA," without the Lender being joined as a party to this proceeding. But, contrary to Urban Commons' representations, the Union does not ask the Court to bind the Lender to the IWA; rather, the Union asks the Court to confirm the Award, which merely requires Urban Commons to correct its violation. *See* Union Pet.; Award at 22. Urban Commons, and not the Lender, is the party obligated under the terms of the IWA, and the party to the arbitration that resulted in the Award. Because the Lender "is not required to do anything under the arbitration award, . . . its absence could in no way preclude complete relief from being granted." *ConnTech*, 102 F.3d at 682. Thus, the Court concludes that it can provide the requested relief without the Lender being a party to these proceedings.

Additionally, Urban Commons has not shown that the Lender is a required party under Rule 19(a)(1)(B). Although the Lender has not moved to intervene in the proceedings before this Court, the Lender appears to have claimed an interest in the subject matter of these proceedings because it filed a brief to the IC. *See* Award at 22 n.2; *see also SafeNet*, 758 F. Supp. 2d at 259; *Northrop*, 705 F.2d at 1043–44. But, Urban Commons has not demonstrated that disposing of this action without the Lender would "impair or impede" the Lender's ability to protect its interest or subject Urban Commons to "inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B).

Urban Commons argues that "the Lender has an interest in not being forced to assume the IWA," U.C. Reply at 11, but, as described above, confirming the Award would not force the

6

Lender to do so. Moreover, the Court is not persuaded that confirming the Award "will[,] as a practical matter[,] impede the Lender's ability to maintain its financing agreement with Urban Commons without being required to sign the IWA." *Id.* As the Second Circuit found when assessing a similar situation, although the Mortgage Agreements "may be affected" by these proceedings, they are not "the contract at issue." *MasterCard*, 471 F.3d at 386. And, "[e]ven if [the Union] prevails and receives the relief it seeks, that does not render [the Mortgage Agreements] invalid." *Id*. Furthermore, Urban Commons has not shown that any impediment to the Lender's interest would be caused by the Lender's absence in these proceedings. *Id*. at 387; *see also* Fed. R. Civ. P. 19(a)(1)(B)(ii). Without such a showing, the Court does not find that the Lender's presence is required.

The Court also finds that Urban Commons has not shown that it would be subject to a substantial risk of incurring inconsistent obligations if the Lender is not joined as a party. *See* Rule 19(a)(1)(B)(ii). Here, Urban Commons argues that it faces a risk of inconsistent obligations because the Mortgage Agreements are "at the heart of the dispute in this case." U.C. Reply at 12. Again, the Mortgage Agreements are not the subject of this proceeding—the Award is. *See MasterCard*, 471 F.3d at 387. Urban Commons does not explain how it would be subject to inconsistent obligations as a result of confirmation of the Award, let alone how those inconsistent obligations would be caused by the Lender's absence in these proceedings. From the Court's perspective, any "risk of multiple obligations to different parties [would] not . . . result [from the Lender's] absence in this lawsuit"; rather it would result from Urban Commons' violating the IWA. *See id.*

Accordingly, the Court may confirm the Award even if the Lender is not joined in these proceedings.

II. <u>Review of the Award</u>

　A. <u>Legal Standard</u>

A district court's review of labor arbitration awards "is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *Nat'l Football League Mgmt. Council v. Nat'l Football Leage Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016). The Second Circuit has found that courts may vacate arbitration awards under the LMRA in three scenarios relevant here: (1) when the arbitrator has acted outside the scope of his authority or in contradiction of an express or unambiguous term of the agreement, *see NYC & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y, Inc.*, 826 F.3d 611, 618 (2d Cir. 2016) ("*NYC & Vicinity*"); (2) when the arbitrator exhibits a "manifest disregard for the law," *see Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council*, 729 F. App'x 33, 36 (2d Cir. 2018); or (3) when the contract, as interpreted by the arbitrator, violates an explicit public policy, *NYC & Vicinity*, 826 F.3d at 812. "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

As to the first scenario, courts are "not authorized to review the arbitrator's decision on the merits"; rather, they must "determine 'whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement.'" *NYC & Vicinity*, 826 F.3d at 618 (quoting *Nat'l Football League*, 820 F.3d at 537). If the court finds that "the arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract," it should confirm the award. *Nat'l Football League*, 820 F.3d at 537 (quotation marks omitted). But, courts should vacate awards if they

"contradict[] an express and unambiguous term of the contract or . . . so far depart[] from the terms of the agreement that [they are] not even arguably derived from the contract." *United Bhd. of Carpenters v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015); *see also Nat'l Football League*, 820 F.3d at 537 (awards should be vacated if they do not "draw[] [their] essence from the collective bargaining agreement" and instead reflect "the arbitrator's own brand of industrial justice" (quotation marks omitted)).

For a court to find that an arbitrator exhibited a manifest disregard of law, the party requesting vacatur must "show the arbitrator made something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Chelsea Grand*, 729 F. App'x at 36. Judicial inquiry is "extremely limited." *Id*. (quotation marks omitted). Indeed, the "governing law alleged to have been ignored by the arbitrators [must have been] well defined, explicit, and clearly applicable," and the arbitrator must have "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." *Id*. (quotation marks omitted) (alterations in original); *see also D.H. Blair*, 462 F.3d at 110–11.

When determining if an award should be vacated on public policy grounds, courts must determine "whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *NYC & Vicinity*, 826 F.3d at 618 (citation omitted). "[T]he public policy ground for vacatur is [also] extremely limited." *Id*. (quotation marks omitted).

B. Petition to Vacate

Urban Commons advances numerous arguments in support of its petition to vacate the Award. First, Urban Commons contends that the IC exceeded his power under the arbitration

9

agreement in violation of the FAA. *See* U.C. Mem. at 5–11, ECF No. 6. Second, Urban Commons argues that the IC did not draw the Award from the essence of the IWA and exhibited a manifest disregard for the law because the IC misinterpreted the words "transfer," "transferee," and "employer" and ignored past practice. *See* U.C. Mem. at 6–7, U.C. Reply at 3–4, 6–8. And third, Urban Commons argues that the Award is "commercially unreasonable" and violates public policy. U.C. Mem. at 12–15; U.C. Reply at 8–11.

As to the first argument, it is clear that the Award cannot be vacated based on a finding that the IC violated the FAA. As the Second Circuit has stated, "[t]he FAA does not apply to arbitrations . . . conducted pursuant to the LMRA." *Nat'l Football League*, 820 F.3d at 545 n.13.

Next, Urban Commons argues that the IC's award should be vacated because Article 59 "is expressly limited to transactions that cause a transfer of majority ownership, management, or operational control," and, under New York law, "lender agreements do not transfer ownership, management, or control." *See* U.C. Mem. at 7. But, assuming, *arguendo*, that the law identified by Urban Commons sets out a statement of "governing law" that is "well defined, explicit, and clearly applicable," *Chelsea Grand*, 729 F. App'x at 36, it has not shown that the IC disregarded that governing law. The IC recognized, in keeping with the law identified by Urban Commons, that the Lender currently possesses a "security interest," and did not base the Award on a finding that the Mortgage Agreements transferred ownership, management, or control at the time they were signed. *See* Award at 23. Instead, the IC concluded that the Mortgage Agreements created a contingent transfer that would take effect in the event of a default and found that this type of transaction fell within Article 59. *Id*. Thus, the Award does not exhibit a manifest disregard of the law. *See Chelsea Grand*, 729 F. App'x at 36. Moreover, in light of Article 59's broad language stating that it applies to "any transaction of any kind whatsoever which transfers

majority ownership, management or operational control," IWA, Art. 59(B), the Court does not find that the Award fails to "draw[] its essence from" the IWA, *see Nat'l Football League*, 820 F.3d at 537.

Urban Commons' argument that the Lender cannot be considered a "transferee" under the IWA because the Lender has not yet received a property interest in the Hotel also fails. *See* U.C. Reply at 3–4. Article 59 uses the word "transferee" to refer to the party that "assume[s] . . . majority ownership, managerial or operational control" as a result of "any transaction of any kind whatsoever which transfers majority ownership, management or operational control." IWA Art. 59(B). Because the IC properly determined that a contingent transaction, like the one at issue here, falls within the broad language of Article 59(B), *see* Award at 23, he could, therefore, have considered a party to a contingent transaction a transferee for the purposes of Article 59. Indeed, Article 59(C) uses the term "transferee" to refer to a party who has not yet assumed control of the property, as it describes a "transferee" executing an assumption agreement "not less than ten (10) business days prior to any transfer." IWA, Art. 59(C). This language provides further support for the IC's defining "transferee" to include those who have not yet received possession or control of the Hotel. Thus, the Court finds that the IC did not manifestly disregard the law because the definition of "transferee" given in other contexts is not "clearly applicable" to Article 59 of the IWA. *See Chelsea Grand*, 729 F. App'x at 36. And, given the broad language of Article 59(B) and the usage of "transferee" in Article 59(C), the Court determines that the Award's construction of "transferee" "is at least arguably derived from an interpretation of the [IWA] itself and contradicts none of its express and unambiguous terms." *NYC & Vicinity*, 826 F.3d at 619 (quotation marks omitted).

Moreover, the IC did not contradict the IWA's express terms by considering the Lender to be an "employer." U.C. Mem. at 6. This argument fails, primarily, because the IC did not base his decision on a finding that the Lender is considered an employer under the IWA. Although the IC noted in the Award that "the IWA's definition of 'employer' includes any successor which is extremely broad to include a lender," *see* Award at 22 n.3, he based his conclusion on a finding that the Lender is considered a "transferee," *id*. at 23. And, to the extent that the Award contains some ambiguities as to the basis for the IC's decision, this Court must resolve those ambiguities in favor of confirmation. *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 212 n.8 (2d Cir. 2002) ("[W]here the arbitral tribunal has handed down an opinion open to more than one possible reading, we will confirm the award so long as, under one of these readings, the judgment rests upon a colorable interpretation of law."). Thus, the Court does not find that the IC acted in "contradict[ion of] an express and unambiguous term of the contract." *Tappan Zee Constructors*, 804 F.3d at 275.

Urban Commons further argues that the Award should be vacated because it "ignores the history of the IWA's implementation." U.C. Reply at 6–8. The Court does not consider this a proper basis for vacating the Award. Even if the Award did depart in some measure from past practices, this would not show that the Award "so far departs from the terms of the agreement that it is not even arguably derived from the contract." *Tappan Zee Constructors*, 804 F.3d at 275. Moreover, the Court is not persuaded that the Award improperly ignores prior interpretations given to the IWA. As the parties recognize, the IC was tasked with deciding a "first time issue," *see* Award at 22; U.C. Mem. at 11; Union Mem. at 15, ECF No 25, and it would be illogical to require the IC to rigidly adhere to past practice when assessing an issue of first impression.

Furthermore, the Court disagrees with Urban Commons' third argument—that the Award should be vacated because it is commercially unreasonable or against public policy. First, the Court finds that it does not have the power to vacate the Award based on the Court's finding that it is commercially unreasonable. As the Second Circuit has recognized, "arbitrators are chosen by the parties because of their expertise in the particular business and their trusted judgment to interpret and apply [the] agreement in accordance with the industrial common law of the shop and the various needs and desires of the parties." *Nat'l Football League*, 820 F.3d at 536 (quotation marks omitted) (alteration in original). The Court shall not supplant the IC's reasoned judgment with its own assessment of the merits of the Award. *See id.*

Finally, the Court does not find that the Award contravenes public policy. Urban Commons argues that the Award violates public policy because it "force[s] the Lender to assume a collective bargaining agreement and arbitration agreement that it never voluntar[ily] entered." *See* U.C. Reply at 10; *cf. AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). But, contrary to Urban Commons' representations, the Award does not force the Lender to do anything. Rather, it finds that Urban Commons has engaged in a "technical violation" of the IWA and gives Urban Commons "a reasonable period of time to correct the violation." Award at 23. Thus, the Award itself is not inconsistent with public policy. *See NYC & Vicinity*, 826 F.3d at 619–20.

Accordingly, Urban Commons' petition to vacate the Award is DENIED.

C. Petition to Confirm

Because the IC acted within the scope of his authority and did not exhibit a manifest disregard for the law or issue an Award that violates public policy, the Court finds that the

Award should be confirmed.  *See NYC & Vicinity*, 826 F.3d at 618; *Chelsea Grand*, 729 F. App'x at 36.

Accordingly, the Union's petition to confirm the Award is GRANTED.

## CONCLUSION

For the foregoing reasons, the Union's petition to confirm the Award is GRANTED, and Urban Commons' petition to vacate the Award is DENIED.  The Clerk of Court is directed to terminate the motions pending at ECF Nos. 5 and 22.

SO ORDERED.

Dated: March 18, 2022
      New York, New York

_____
ANALISA TORRES
United States District Judge